UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BENJAMIN HARBAUGH, )<br>    Plaintiff, )<br> )<br>v. )    Case No. 19-cv-04239<br> )<br>ERIC KUNKLE *et al*, )<br>    Defendants. ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is a Motion for Summary Judgment filed by Defendants John Jeslus, Eric Kunkle, and Rose Taylor (Doc. 71). Defendants Robin Hyman and Amber Jelinek have also filed a Motion for Summary Judgment (Doc. 74). Plaintiff Benjamin Harbaugh has not responded to Defendants' dispositive motions. Defendants have also filed Motions to Withdraw (Docs. 77, 78)

I.    Background

Plaintiff is civilly committed at the Illinois Department of Human Services Treatment and Detention Facility ("TDF") under the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1 *et seq*. In December 2019, Plaintiff filed a Complaint (Doc. 1) under 42 U.S.C. § 1983, alleging constitutional violations at TDF. After screening Plaintiff's pleading, the Court concluded he stated Fourteenth Amendment failure to protect claims against Defendants Hyman, Jelinek, Jeslus, Taylor, and John and Jane Doe members of TDF's rooming committee and security staff. (Doc. 7 at 13:1.) Although the

Court determined Plaintiff had not stated a plausible claim against Defendant Kunkle, he remained a party to facilitate the identification of the John and Jane Doe Defendants. (*Id.* at 7:2.)

## II. Preliminary Issues

On May 25, 2021, the Court entered a Scheduling Order, directing Plaintiff to file a motion to substitute the identities of any Doe defendants within sixty days or risk dismissal of those Defendants. (Doc. 49 at 4:9.) Plaintiff has not complied nor sought an extension of time to comply. Therefore, the John and Jane Doe members of TDF's rooming committee and security staff are dismissed from Plaintiff's suit. Accordingly, Defendant Kunkle, whose purpose was to assist Plaintiff in identifying the Doe Defendants, is also dismissed as a party.

Defendants respective Motions to Withdraw (Docs. 77, 78) are granted. The Clerk of the Court ("Clerk") shall terminate former Assistant Attorney General Hinal Patel as counsel of record for Defendants Jeslus and Taylor. The Clerk shall also remove attorney Martha E. Ravenhill as attorney of record for Defendants Hyman and Jelinek.

## III. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

"When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence … of a genuine dispute.'" *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence supporting the nonmovant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

**IV.  Material Facts**

In their respective Motion for Summary Judgment, Defendants included a section outlining the undisputed material facts in this case. (Docs. 72 at 2-4:1-26; 74 at 2-6:1-52); *see also* Local Rule 7.1(D)(1)(b) (stating that a motion for summary judgment must include a section outlining the undisputed material facts). Under Local Rule 7.1(D)(2)(b), a party opposing a motion for summary judgment must respond to the moving party's

undisputed material facts and provide additional material facts supported by admissible evidence in the record.

Plaintiff has not filed a response to Defendants' summary judgment motions. Under Local Rule 7.1(D)(2)(b)(6), a party's "failure to respond to any numbered fact will be deemed an admission of the fact." A district court does not abuse its discretion by strictly enforcing this rule, even against a *pro se* litigant. *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016); *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001). Therefore, the Court relies on the following supported facts provided in Defendants' motion for summary judgment.

Shortly after arriving at TDF, Plaintiff consented to treatment and was assigned to the Orange Treatment Team. (Pl. Depo. Doc. 72-1 at 11:8-17.) Defendant Jelinek was Plaintiff's primary therapist. (*Id*. at 12:14-19.) Defendant Hyman was a Clinical Therapist who provided Plaintiff treatment. (*Id*. at 13:2-7.)

Plaintiff's roommate after arriving at TDF in March 2018 was Mr. S. (Pl. Depo. Doc. 72-1 at 13:13-19; 14:3-5.) Mr. S asked for Plaintiff's consent for sexual contact on March 26, April 2, and April 9, 2018. (*Id*. at 20:19-24.) Plaintiff refused each of Mr. S's requests. (*Id*. at 20:1-11.)

Defendant Jelinek first met Plaintiff on April 18, 2018. At their meeting, Plaintiff told Jelinek about Mr. S's requests and explained he had yet to inform TDF security because he did not know how to convey his concerns. Jelinek provided Plaintiff with

options, including "how to tell staff, refusing housing, and placing room requests."[1] (*Id.* at 37:19-24, 38:1-3; Prog. Note, Doc. 74-6 at 3.) Immediately after the meeting, Jelinek informed a Security Therapy Aide ("STA"). (Incident Rep. Doc 74-4 at 5.)

On April 19, 2018, Defendant Jelinek told Plaintiff's treatment team about his concerns with Mr. S. (*Id.*) That day, Jelinek and the treatment team met with Plaintiff. Jelinek noted that Plaintiff "did not indicate he was fearful of Mr. [S]. Rather, he stated he was willing to stay in his room until he found an appropriate roommate." (*Id.*) Plaintiff also stated he withdrew a request to room with another resident after hearing the person was "dirty." (*Id.*) On April 20, 2018, Jelinek submitted an incident report regarding Plaintiff's account of Mr. S's sexual requests and her meeting with Plaintiff and his treatment team on April 19, 2018. (*Id.*) Jelinek stated that Plaintiff had never reported he felt threatened or unsafe living with Mr. S. (Jelinek Aff. Doc. 74-3 at 3:15.)

Defendant Hyman became aware of Mr. S's and Plaintiff's complaints on April 25, 2018, when Hyman met with Mr. S to provide him mental health treatment in a group setting. (Hyman Aff. Doc 74-2 at 2:10.) Mr. S met with Defendant Hyman and another Clinical Therapist after the group meeting concluded. (*Id.* at 2:11.) Mr. S denied he sexually propositioned Plaintiff and surmised Plaintiff concocted the story to get another roommate. (*Id.* at 2:12.) Mr. S expressed extreme anger and stated he did not know if he could control his emotions. (*Id.* at 3:13-14.)

---

[1] The TDF Resident Handbook provides that a resident may refuse housing at any time if the situation if deemed an emergency or urgent. (Jelinek Aff. Doc. 74-3 at 3:14; Doc. 74-7 at 2-3.)

Believing Mr. S was truthful, Hyman reported her encounter by filing an incident report with security personnel. (*Id*. at 3:13-14; Incident Rep. 74-4 at 1.) Hyman stated that her responsibilities do not include security issues, the security team would assess and address any threats based on her incident report, and she defers to security personnel when problems arise. (Id. at 3:15, 19.)

Residents who participated in group therapy sessions with Mr. S on April 25, 2018, informed Plaintiff that Mr. S verbally threatened Plaintiff after being confronted in group therapy sessions about his sexual requests. (Pl. Depo. Doc. 72-1 at 33:13-20.) Plaintiff stated that he sued Defendant Taylor because she was present at the April 25, 2018, session during Mr. S's outburst. (*Id*. at 36:16-24; 37:1-6.) Plaintiff acknowledged that he was not present when Mr. S purportedly made the threats and has never met with Taylor. (*Id*. at 31:1; 34:4-9.)

Later that evening, Mr. S threatened to "beat" Plaintiff after lockup. (Pl. Griev. Doc 72-2 at 92.) Plaintiff informed an STA of Mr. S's threat. (*Id*.) The STA informed Defendant Jeslus, who asked Plaintiff to remain in his cell that night. (*Id*.) Plaintiff complied. (Doc. 72-2 at 72:9-12.) Plaintiff acknowledged his only encounter with Jeslus regarding Mr. S occurred on April 25, 2018. (*Id*. at 73:4-8.) Plaintiff added that Jeslus "wasn't here too long after that." (*Id*. at 73:8-10.)

On April 26, 2018, Plaintiff and Mr. S were reassigned to different rooms within the same housing unit until TDF staff could better understand the situation. (*Id*. at 39: 8-12). Plaintiff and Mr. S were then moved to different housing areas. (*Id*. at 41: 2-24).

On May 10, Plaintiff submitted a grievance about Mr. S's threats to harm Plaintiff physically. (Pl. Griev. Doc 74-8 at 1.) Defendant Jelinek met with Plaintiff that day. Jelinek acknowledged she was unaware of the threats Mr. S. made on April 25, 2018, or that Plaintiff and Mr. S were no longer roommates. (Jelinek Aff. Doc. 74-3 at 6:39.) Jelinek reiterated the options she previously mentioned. Plaintiff did not correct Jelinek's misunderstanding regarding Plaintiff's current housing or convey Mr. S posed a danger to Plaintiff. (*Id.*)

On May 17, 2018, Plaintiff was approved to reside with another resident in the same housing unit as Mr. S on a two-week temporary basis.[2] (E-mail Exchange, Doc. 74-10 at 3.) On June 4, 2018, Mr. S struck Plaintiff in his head with a sock full of batteries. (Doc. 72-2 at 47:9-17). Plaintiff and Mr. S were not roommates when the attack occurred. (*Id.* at 47: 21-24; 48: 1-2).

V. **Analysis**

**A. Plaintiff's Failure to Respond to Defendants' Dispositive Motions**

As noted earlier, Plaintiff did not file a response to Defendants' Motion for Summary Judgment. As a result, Plaintiff fails to comply with Rule 56(c) in that he has not cited "particular parts of materials in the record" that support his opposition or "show[] that the materials cited do not establish the absence…of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B). Plaintiff's failure is deemed an admission of the summary-judgment motion. *See* Local Rule 7.1(D)(2) ("A failure to respond will be deemed an

---

[2] The record does not reflect the date Plaintiff moved to the housing unit where Mr. S resided.

admission of the [summary-judgment] motion."). Although Plaintiff's failure to respond requires this Court to deem Defendants' factual assertions admitted, summary judgment in favor of the movant is not automatic. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The ultimate burden remains with Defendants to show that they are entitled to judgment as a matter of law. *Id.*

### B. Fourteenth Amendment and Failure to Protect Standards

Under the Fourteenth Amendment, pretrial detainees are entitled to be free from conditions that amount to punishment. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). "To state a viable failure-to-protect claim under the Fourteenth Amendment, a pretrial detainee must allege: (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries." *Thomas v. Dart*, 39 F. 4th 835, 841 (7th Cir. 2022).

#### 1. Defendants Jeslus and Taylor

Plaintiff's only contact with Defendant Jeslus regarding Mr. S. occurred on April 25, 2018, when he conveyed the following:

> I explained the situation that [Mr. S] had propositioned me, that it got brought up in his group[,] that he was verbally aggressive toward myself and others on the unit[,] that he has made the threat that he was [going to] beat my ass tonight with the doors locked.

(Pl. Depo. Doc. 72-1 at 71:11-17.)

Plaintiff does not claim Defendant Jeslus spoke with or observed Mr. S.'s demeanor on April 25, 2018, or that Jeslus knew Mr. S posed a substantial risk of inflicting severe harm to Plaintiff. Instead, the record shows that despite the previous sexual requests and threats made by Mr. S. earlier that evening, Plaintiff declined a potential roommate, opted to remain roommates with Mr. S. until a suitable roommate was located, and opted to stay in his assigned room on the night of April 25, 2018, as Jeslus requested. After staying overnight without incident, Plaintiff and Mr. S were no longer roommates on April 26, 2018. Thus, Plaintiff cannot establish Defendant Jeslus had the requisite intent or placed Plaintiff at substantial risk of suffering serious harm. Moreover, the summary judgment record cannot establish Jeslus' actions on April 25, 2018 caused Plaintiff's injuries on June 4, 2018.

Plaintiff also fails to establish the elements of his failure to protect claim against Defendant Taylor. Plaintiff speculates that Taylor was present at the April 25, 2018, group therapy session when Mr. S allegedly threatened Plaintiff. However, Plaintiff admits he did not attend the group therapy session and never spoke with Taylor. Therefore, given the lack of relevant, admissible evidence coupled with Plaintiff's admissions, Plaintiff cannot establish the elements of his failure to protect claim against Taylor. Therefore, the Motion for Summary Judgment filed by Defendants Jeslus and Taylor is granted.

### 2. Defendants Hyman and Jelinek

The record demonstrates Defendant Jelinek's proactive approach regarding Plaintiff's complaints. When Jelinek was initially made aware of Mr. S's sexual advances, she provided Plaintiff guidance, informed his treatment team, and conferred with the team and Plaintiff the following day. During that meeting, Plaintiff did not express concerns for his safety, retracted a proposed roommate change request, and expressed his willingness to remain roommates with Mr. S until a suitable arrangement could be made. Jelinek then submitted an incident report summarizing Plaintiff's account of Mr. S's sexual propositions and her meeting with Plaintiff and his treatment team.

Defendant Jelinek met with Plaintiff again on May 10, 2018, after Plaintiff submitted a grievance about Mr. S's threats to harm Plaintiff physically. Although Jelinek admits she was unaware that Mr. S and Plaintiff were no longer roommates, Plaintiff did not correct her misunderstanding and, more importantly, did not indicate that he was in danger or feared for his wellbeing because of Mr. S. In this regard, Jelinek's assertion that Plaintiff never conveyed to her that he felt threatened by Mr. S is undisputed.

Similarly, Defendant Hyman met with Plaintiff and wrote an incident report detailing Mr. S's angry reaction to what Mr. S characterized as false rumors he solicited Plaintiff for sex. Hyman noted in her report that Mr. S. expressed that he might be unable to control his anger, which Hymen believed was credible. Hyman submitted the incident report to alert TDF's security team, which she reasonably relied on to address security issues. *See Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("In *Burks*, we rejected the notion that 'everyone who knows about a prisoner's problems' will incur §

1983liability." (quoting *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009))); *see also Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) (holding that officials do not act with deliberate indifference "if they are helpless to correct the protested conditions."). Thus, the Motion for Summary Judgment filed by Defendants Jelinek and Hyman is granted.

**IT IS THEREFORE ORDERED:**

1) **Defendants Kunkle and the John and Jane Doe members of TDF's rooming committee and security staff are DISMISSED from Plaintiff's suit for the reasons noted in the Court's Order.**

2) **Defendants' respective Motions for Summary Judgment (Docs. 71, 74) are GRANTED for the reasons stated in the Court's Order.**

3) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present in his appeal to assist the Court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c);** *see also Celske v Edwards*, **164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be allowed to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith.");** *Walker v O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered September 18, 2023.

s/ Colleen R. Lawless
_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE